135 N.J. Super. 372 (1975)
343 A.2d 478
JOSEPH DAVI AND ROSE DAVI, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
CABANA POOLS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND S. TOM FREDA, A.K.A. THOMAS FREDA, DEFENDANTS, AND ROBERT D. STEARNS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1975.
Decided July 16, 1975.
*374 Before Judges MICHELS, MORGAN and MILMED.
Mr. Kenneth G. Poller argued the cause for appellants (Messrs. Weitz, Gutfleish, Wurtzel and Sterling, attorneys).
No brief was filed in behalf of respondent.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs appeal from a judgment dismissing their complaint against defendant Robert D. Stearns entered by the trial judge at the close of all of the evidence. Plaintiffs had entered into a contract with defendant Cabana Pools, Inc. (Cabana), pursuant to which Cabana was to furnish the necessary materials and labor for the installation of a swimming pool on plaintiffs' property in the Borough of Hopatcong, New Jersey. The contract provided that plaintiffs were to be responsible for the pool location within their property lines. However, defendant S. Tom Freda, a/k/a Thomas Freda, an officer of Cabana, informed plaintiffs during negotiations that he would take care of everything. Freda looked at the property, measured it and advised plaintiffs that everything would be fine. However, Freda apparently did not inform plaintiffs of the necessity of obtaining building permits in order to install the pool. Plaintiffs signed the contract and executed a promissory note which was assigned by Cabana to New Jersey Mortgage and Investment Corp.
Shortly after the contract was signed Cabana applied to the borough for the necessary building and zoning permits on behalf of plaintiffs. Stearns, who was also president of his own pool company, was employed part-time by Cabana and other companies to obtain these permits. He completed and signed the applications for the permits filed with the *375 borough. In each application he stated that the lot size of the property on which the pool was to be installed was 100 feet wide in the front and rear and 150 feet deep. He also stated that the pool would be erected 50 feet from the front line, 10 feet plus from the rear line, 15 feet from the left side line, and 5 feet plus from the right side line. Each application was signed by Stearns. The application for the building permit contained the following certification:
I, Robert D. Stearns interested as Agent residing at 89 Sand Rd Fairfield NJ will superintend the construction of the within said building, and having the proper authority from the owner to apply for this permit, and make this application, say: That the statements made in this application are true, and the proposed work will be done in accordance with the ordinances of the Borough of Hopatcong.
And the application for the zoning permit contained the following certification:
I, Robert Stearns interested as Agent Residing at 89 Sand Rd Fairfield, NJ having proper authority from the owner to apply for this permit and make this application say: That the statements made in this application are true.
On the basis of the truth and accuracy of the statements set forth in these applications the borough issued the zoning and building permits and Cabana constructed the pool on plaintiffs' property.
The measurements set forth in both applications and certified by Stearns to be true were not truthful and were grossly inaccurate. The property was only 46 feet wide in the front and rear and only 100 feet deep. In addition, Stearns did not "superintend the construction" of the pool. As a result the pool was installed in violation of the sideline requirements of the borough's zoning ordinance. Plaintiffs were therefore compelled to remove the pool at their own expense. They instituted this action against Cabana, Freda and Stearns to recover the damage they sustained as a result of alleged fraud, misrepresentation and negligence *376 of each defendant. Freda settled with plaintiffs prior to trial. At the close of all of the evidence the trial court directed a verdict in favor of plaintiffs against Cabana, which had defaulted, and granted Stearns' motion for judgment, holding that Stearns did not owe any duty to plaintiffs and that the representations made by Stearns in the applications for the building and zoning permits were not relied upon by plaintiffs. We disagree.
We are satisfied that in the light of the circumstances Stearns had a duty to exercise reasonable care in the preparation and filing of the applications for the building and zoning permits. As Justice Heher stated in Wytupeck v. Camden, 25 N.J. 450 (1957):
"Duty" is not an abstract conception; and the standard of conduct is not an absolute. Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, Lokar v. Church of the Sacred Heart, 24 N.J. 549 (1957). In the field of negligence, duty signifies conformance "to the legal standard of reasonable conduct in the light of the apparent risk"; the essential question is whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." Prosser on Torts (2d ed.), section 36. Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.

* * * * * * * *
"Duty" is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially "a matter of risk * * * that is to say, of recognizable danger of injury." Prosser, Ibid., section 30. [at 461-462]
Stearns was paid at the rate of $20 an application and had processed approximately 60 to 70 such applications for Cabana alone. He also handled similar applications for other companies, as well as his own pool company. He knew, or at *377 the very least should have known, that the issuance of the necessary building and zoning permits was dependent upon the truth and accuracy of the facts stated in the applications, and that if a pool or any other structure were built in violation of the zoning laws, the property owner would be compelled to remove the structure at his expense. In spite of this Stearns did nothing to verify the truth or accuracy of the facts he certified in the applications and admittedly never gave any consideration to the consequences of his conduct. When he did not receive the usual plot plan for the proposed location of the pool on plaintiffs' property but only "a mimeographed sheet or photostatic copy of something, which wasn't a plot plan," and it "looked like it was made out by the salesman or somebody of the proposed location of the pool," he did not personally inspect and measure the property or even make any inquiry to verify the truth and accuracy of the information furnished him. He merely assumed that the measurements furnished to him by Mr. Tholen, a vice-president of Cabana Pools, were truthful. Moreover, there was no proof that Stearns was to superintend the construction of the pool, and his false statement to this effect apparently was made without direction by or command of Cabana.
We are satisfied from our study of the record that reasonable minds could differ as to whether Stearns exercised that degree of care in the preparation and filing of the applications that the reasonably prudent person under similar circumstances would have exercised. See Rappaport v. Nichols, 31 N.J. 188, 201 (1959); Ambrose v. Cyphers, 29 N.J. 138, 144 (1959). See also Prosser on Torts (4 ed. 1971), § 31 at 145-149. Thus, a factual issue was clearly presented for resolution by the jury, and the trial judge therefore erred in granting Stearns' motion for judgment at the close of the evidence.
Furthermore, we point out that Stearns is not relieved from liability for his tortious conduct by the mere fact that he prepared and filed applications for the permits at the direction of Cabana, or was furnished measurements of the *378 property and proposed location of the pool by one of Cabana's vice presidents. The general rule is set forth in 3 Am. Jur.2d, Agency, § 300 at 660-661:
* * * In other words, if the agent is under a duty to third persons as well as to his principal, a breach of his duty to such third persons will render the agent liable to them. Thus, whether he is acting on his own behalf or for another, an agent who violates a duty which he owes to a third person is answerable to the injured party for the consequences. It is no excuse to an agent that his principal is also liable for a tort, inasmuch as the rights of a principal and agent inter se do not measure the rights of third persons against either of them for their torts, and the fact that an agent might have a right of exoneration or indemnity against his principal for a tort would not affect the rights of a third person against the agent. Nor is an agent who is guilty of tortious conduct relieved from liability merely because he acted at the request, or even at the command or direction, of the principal, unless he is exercising a privilege of the principal to commit the act. * * *
In accordance with these principles, an agent or other employee, merely because of his relationship as an agent or employee, or because of the additional fact that he has acted at the direction or command of his employer, cannot escape or exempt himself from liability to a third person for his own negligence or his own positive wrongs, such as a trespass, an assault, the conversion of property, fraud or misrepresentation, defamation, or other form of tortious conduct.
See also, Martin v. Baldwin, 90 N.J.L. 241, 244 (E. & A. 1917); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, 1638 (1949); Restatement of the Law, Agency 2d, § 343 at 105-106, § 350, comment (a) at 119-120. It was still for the jury to determine whether Stearns should have recognized and foreseen an unreasonable risk or likelihood of harm to plaintiffs by his failure to verify the truth and accuracy of the information upon which the issuance of the necessary permits by the Borough was dependent. The integrity and usefulness of statements of this nature would be eroded by relieving the person who certifies to their truth and accuracy of his responsibility for them because he may have followed the direction or command of his superior or employer.
*379 Accordingly, the judgment in favor of Stearns is reversed and the case is remanded to the trial court for trial consistent with the views expressed in this opinion.
MORGAN, J.A.D. (dissenting).
I would affirm the judgment dismissing plaintiffs' claim against Stearns although for reasons different from those given by the trial judge. Stearns was merely a subordinate employee of Cabana Pools, Inc. According to the testimony, his sole function was to run various errands for his employer, including making applications for the necessary municipal permits and licenses in connection with pool construction. Stearns had never visited the plaintiffs' property, and in describing the dimensions thereof, relied upon the information given to him by his employer on a diagram drawn by the employer for purposes of making the application for permission to install the swimming pool. There was no evidence that he incorrectly copied this information.
In my view, an employee justifiably relies upon information supplied him by his employer in the absence of circumstances suggesting the unreliability thereof. He is not required to routinely question the accuracy of that information or to suspect its negligent or fraudulent character, and is therefore not obligated to himself check its accuracy. "An agent can properly rely upon statements of the principal to the same extent as upon statements from any other reputable source." Restatement, Agency 2d, § 348, comment (b), (1958 ed.).
Stearns occupied the status of an innocent agent of a guilty principal, and this by the undisputed facts in the case. As noted in the Restatement, Agency 2d, supra:
b. Innocent agent of guilty principal. An agent is not liable because of misrepresentations of the principal or of another agent unless he knows or should know of them. He is not affected by the knowledge of facts which the principal or another agent has and which, if known to him, would cause his representations to be fraudulent. An agent who makes untrue statements based upon the information given to him by the principal is not liable because of the fact *380 that the principal knew the information to be untrue. An agent can properly rely upon statements of the principal to the same extent as upon statements from any other reputable source.
Hence, in the illustration given by the Restatement, Agency, for this principle, a salesman employed by an antique dealer told by his employer that a certain article for sale is an authentic antique is not liable to one who purchases it on his representation that it is an antique when it turns out to be a modern piece. The salesman is under no duty to suspect the accuracy of his employer's information and to independently confirm it. The example given by the trial court is also appropriate. An employee of a public utility does not become liable to a customer whose power he turns off when his employer informs him that the customer has defaulted in payment of his account, even though that information turns out to be inaccurate. To require an employee to verify information supplied by an employer when no reason appears to cause him to doubt its accuracy, would seriously impede the free functioning of business and industry. See also, Smith v. Badlam, 112 Vt. 143, 22 A. 2d 161 (Sup. Ct. 1941). Subordinate employees must be permitted to act upon information supplied by their employers in the absence of any untoward circumstances suggesting its unreliability, and they should not be subjected to the risk of personal liability when they do so.
The fact that Stearns certified the truth of the information supplied adds nothing to the case. First, in neither certification did Stearns aver the truth of the information based upon his own personal knowledge. He simply certified the information to be true as he justifiably believed it to be. Second, Stearns was either under a duty to personally verify the information before filling in the application or he wasn't. He was either entitled to rely on his employer's information or he wasn't. His duty in that regard or the justifiability of his reliance on his employer's probity and the accuracy of the information given him cannot be made *381 to depend upon whether the particular municipality required certification of information contained in an application as a condition to issuance of the requisite permits and licenses.
The record is devoid of any evidence of circumstances which could have suggested to Stearns that the information given him by his employer concerning the dimensions of plaintiffs' lot was inaccurate or that it so grossly deviated from the truth. As previously noted, in the absence of such circumstances, he was free to assume its truth and is neither morally derelict or legally responsible for his failure to independently check its accuracy. The rule announced in the majority opinion places any subordinate employee in jeopardy of liability for substantial damages (for which he may be uninsured) in any case in which he accepts as true information given to him by his employer even where he has no reason at all to suspect its inaccuracy or fraudulent character. In my view, such a rule is without foundation in considerations of public policy or justice.
I would affirm.