255 N.J. Super. 391 (1992)
605 A.2d 294
DECEMBER WAGNER, PLAINTIFF,
v.
GARY M. SCHLUE, JOHN E. WAGNER, JR., G.M.S. OF ELWOOD, INC., T/A THE LOUNGE AROUND BAR, JOHN DOES, X/Y/Z PARTNERSHIPS, AND ABC CORPORATIONS, DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil), Atlantic County.
Decided: January 10, 1992.
*392 Louis P. McFadden, Jr., attorney for plaintiff.
Lawrence S. Berger, Powell, DeAngelis & Powell, attorney for defendant John E. Wagner.
WINKELSTEIN, J.S.C.
This matter comes before the court on cross motions for summary judgment. Summary judgment may be granted only if there is no genuine issue as to any material fact and all doubts are resolved against the moving party. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954).
Defendant Wagner, hereinafter defendant, is plaintiff's husband. The primary issue is whether defendant, while having control of an automobile, owed a legal duty to plaintiff to ensure that she did not drive the automobile after becoming *393 intoxicated, and by failing to do so, became liable to her for injuries she received in an accident caused by her intoxication.[1] The existing case law imposes liability as to third parties injured by the drunken driver's negligence. Kelly v. Gwinnell, 96 N.J. 538, 549, 476 A.2d 1219 (1984); Lombardo v. Hoag, 237 N.J. Super. 87, 566 A.2d 1185 (Law Div. 1989). This decision explores liability to the intoxicated driver. And for the reasons discussed, it is concluded that such a duty exists, and defendant may be held liable to plaintiff for her injuries.
The material facts are undisputed. A single car accident occurred on March 18, 1989 on the White Horse Pike in Egg Harbor City, Atlantic County, New Jersey. At the time of the accident, plaintiff was the owner and driver of the vehicle. Defendant was a passenger.
On the date of the accident plaintiff, who was a bartender at the Lounge Around Bar, completed her employment and drove home and picked up defendant at approximately 8:00 p.m. They returned to the bar and both consumed beer and shots of Jack Daniels. Defendant purchased beer and at least one shot of Jack Daniels for plaintiff. Plaintiff purchased her own liquor and other patrons of the bar also bought drinks for her. Approximately four hours after arriving at the bar, the parties left to go home. Defendant suggested they leave as they were both becoming intoxicated. Defendant was an unlicensed driver, but having observed that plaintiff was visibly intoxicated, he drove the car. However, after travelling a short distance, plaintiff left the car and walked back to the bar. Defendant returned to the bar with the car.
The parties remained at the bar until it closed. (The time of closing has not been provided to the court.) They were the last ones to leave and although it was defendant's intention to drive home that evening, when they left the bar plaintiff sat in the *394 driver's seat. She refused to move and allow defendant to drive and she began to argue with defendant because he did not have a driver's license. According to defendant, in order to avoid a physical confrontation, he gave the keys to plaintiff, even though he realized that she was too intoxicated to drive home. While on their way home, the car struck a pole and plaintiff was injured.
In Kelly v. Gwinnell,[2]supra, the Supreme Court concluded that a social host who provides intoxicating liquor to a guest, knowing the guest to be intoxicated and soon to be driving, is liable for injuries inflicted on a third party as a result of the negligent operation of the motor vehicle by the guest if the negligence was caused by the intoxication. The Court explained that whether a duty existed was a question of fairness. Citing Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962), the Court explained that the inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. Id. 96 N.J. at 544, 476 A.2d 1219.
The Court noted that the imposition of a duty in such a case was consistent with and supportive of a social goal. "Unlike those cases in which the definition of desirable policy is the subject of intense controversy, here the imposition of a duty is both consistent with and supportive of a social goal  the reduction of drunken driving  that is practically unanimously accepted by society." Id. at 545, 476 A.2d 1219.
*395 Duty is, moreover, tied to what is reasonably foreseeable at the time.
Duty is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially "a matter of risk * * * that is to say, of recognizable danger of injury." Wytupeck v. Camden, 25 N.J. 450, 462 [136 A.2d 887] (1957). See also Davi v. Cabana Pools, Inc. 135 N.J. Super. 372, 376-377 [343 A.2d 478] (App.Div. 1975).
In an earlier decision, Rappaport v. Nichols 31 N.J. 188, 203, 156 A.2d 1 (1959), the Court set forth a philosophy, later adopted in Linn v. Rand, 140 N.J. Super. 212, 216, 356 A.2d 15 (App.Div. 1976), which was used to expand liability to social hosts:
Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others. [Citations omitted.] And, correspondingly, the standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances. [Citation omitted.]
The negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another. Rappaport v. Nichols, 31 N.J. 188, 203 [156 A.2d 1] (1959).
A review of the authority cited reveals a clear progression in the development of a body of law which establishes a legal liability to others as a result of negligent conduct caused by the use of intoxicating beverages. The courts have engaged in a balancing process, weighing the consequences resulting to the various defendants against a public policy of prohibiting intoxicated persons from driving. In citing out of state authority, Kelly seems to have clearly recognized an obligation to third parties imposed upon owners of vehicles who lend cars to persons they know to be intoxicated. "The liability we impose here is analogous to that traditionally imposed on owners of vehicles who lend their cars to persons they know to be intoxicated." [Citations omitted.] Kelly, supra, 96 N.J. p. 549, 476 A.2d 1219.
*396 The distinction which may be drawn between the instant case and the cited authority is that in this case, the driver herself was injured rather than a third party. All of the cases cited concern a duty to a third party. In other words, plaintiff is asking the court to protect her against her own negligent actions. A party must take responsibility for his or her own actions; but to limit the legal duty of defendant would not further the public policy of keeping drunken drivers off of the roads. In weighing the relationship of the parties, the public interest and the nature of the risk in allowing her to drive while intoxicated, the benefits of imposing such a duty clearly outweigh any detriments. Little would have been required of defendant to keep plaintiff from driving. He could have kept the keys and called a cab, the police or asked one of the bar employees to drive them home. When this obligation is weighed against the potential disastrous consequences of allowing a drunken driver on the public highways, the scales tip heavily in favor of imposition of the duty. "It was not difficult conduct that was expected of him, only reasonable conduct." Lombardo, supra, 237 N.J. Super. p. 95, 566 A.2d 1185.
The fact that she herself was injured rather than a third party should not vitiate that duty. The question of whether or not a duty exists is one which is to be decided on the facts as they existed at the time of the initial act, which, in this case, was surrendering control of the vehicle to the intoxicated person. When a person is faced with the question of whether or not to give car keys, and control over an automobile, to one who is too intoxicated to drive, that person must know, at that time, what the consequences of his or her action may be. It is not necessary to wait and see if a third party is injured before a duty is imposed. Wytupeck, supra, 25 N.J. p. 462, 136 A.2d 887.
Just as society no longer looks upon a person who seeks aid in driving home while intoxicated as a pariah, neither would someone who refuses to allow another person to drive while *397 intoxicated be considered disloyal or otherwise unfaithful to that person. Rather, society encourages such conduct.
Therefore, one who has control of an automobile and turns control over to a person who is visibly intoxicated under circumstances which create a reasonable foreseeable risk of harm to that person, as well as to others, may be held legally responsible to the injured intoxicated driver, if the injuries are the result of the negligence of the driver and the negligence was caused by the intoxication.
The defendant's motion for summary judgment to dismiss the claims asserted against him is denied. Plaintiff's motion for summary judgment to determine whether defendant owed a legal duty to plaintiff to ensure that she did not drive the vehicle after becoming intoxicated is granted.
The last issue, whether or not defendant breached the aforementioned duty of care by giving plaintiff the keys to the automobile when he knew that she was intoxicated, is a question which must be resolved by a jury. There are a number of factors for a jury to determine concerning whether or not defendant acted reasonably under the circumstances. There are questions concerning the degree of defendant's intoxication, his ability to drive, any threats of force or coercion used by plaintiff to obtain the keys, and similar issues. All of these sound in the reasonableness of defendant's conduct, and such questions of reasonableness are best left to the jury. Davi v. Cabana Pools, Inc., supra, 135 N.J. Super. p. 377, 343 A.2d 478.
NOTES
[1] Subject, of course, to any defenses raised by defendant, including comparative negligence. N.J.S.A. 2A:15-5.1 et seq.
[2] The legislature limited the duty imposed by Kelly on a social host when it enacted N.J.S.A. 2A:15-5.7 in 1987, restricting a social host's liability to an adult for the negligent provision of alcoholic beverages. N.J.S.A. 2A:15-5.6 et seq. See Finer v. Talbot, 230 N.J. Super. 19, 552 A.2d 626 (App.Div. 1988). The statute, however, applies only to social hosts, and appears to be a response to, among other things, the court's recognition in Kelly, 96 N.J. at p. 548, 476 A.2d 1219, that the decision would interfere with accepted standards of social behavior including the enjoyment, relaxation and camaraderie that accompany social gatherings where alcohol is served. Such considerations are not present in this case.