228 N.J. Super. 453 (1988)
550 A.2d 163
EILEEN DEVIVO, PLAINTIFF-APPELLANT, CROSS-RESPONDENT
v.
MICHAEL ASCHER, JOHN DOE I (A FICTITIOUS NAME), JOHN DOE II (A FICTITIOUS NAME), JANE DOE I (A FICTITIOUS NAME) AND JANE DOE II (A FICTITIOUS NAME), DEFENDANTS-RESPONDENTS CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1988.
Decided October 25, 1988.
*454 Before Judges PETRELLA and SHEBELL.
James A. Mella argued the cause for appellant, cross-respondent (Weiseman, Mella & Ruotolo, attorneys; James A. Mella, on the brief).
Kathryn J. Kingree and Cynthia Goldman argued the cause for respondents, cross-appellants (Voorhees & Acciavatti, attorneys; Kathryn J. Kingree and Cynthia Goldman, of counsel and on the briefs).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiff Eileen DeVivo appeals from an order of the Law Division granting summary judgment in favor of defendant *455 Michael Ascher. 221 N.J. Super. 28. The complaint alleged that defendant, an attorney, had caused to be published defamatory statements regarding plaintiff. The grant of summary judgment was based upon the motion judge's finding of absolute privilege. Defendant cross-appeals from an order compelling him to produce certain personal financial records relating to plaintiff's punitive damage claim.
Defendant Ascher was acting as attorney for Triangle Travel in litigation involving Triangle Travel and DeVivo when the present allegations of defamation arose. In Triangle Travel v. DeVivo, Triangle Travel sued its ex-employee Eileen DeVivo, the plaintiff in the present case, for wrongful and malicious diversion of funds, interference with business relations, destruction of business records, interference with prospective economic advantage, and breach of fiduciary duty allegedly owed by her to Triangle Travel. DeVivo filed a counterclaim seeking $4,515.19 in commissions, although it appears she may have already filed a separate action for this claim.
From January 1978 to August 31, 1984, DeVivo was employed as a sales representative by Triangle Travel. She was paid commissions for sales, including sales of travel services to the Personal Products Division of Johnson & Johnson which primarily involved the booking of travel arrangements for Johnson & Johnson employees attending company meetings. Johnson & Johnson would pay Triangle Travel in advance for the travel services and in the event that Johnson & Johnson personnel did not make the trip, a refund would be sent by Triangle Travel.
In late July 1984, a newly-hired part-time bookkeeper for Triangle Travel reviewed the Johnson & Johnson account and noted errors and omissions which required a complete audit. This apparently delayed the payment of commissions to plaintiff. During August 1984, plaintiff visited an attorney to discuss funds due to her from Triangle Travel.
*456 The attorney advised plaintiff that one of her options would be to draw a check on Triangle Travel's account for the amount allegedly owed her and to endorse the check to the attorney so that he might hold it in trust. Plaintiff had authority only to write checks for payment of agency bills, and not commissions. Plaintiff drew a check on Triangle Travel's account for $4,516.19 and endorsed it to her attorney. She also removed various account records from the office including some for the Johnson & Johnson account. Plaintiff subsequently returned some of these records, but according to the bookkeeper, portions were altered.
Plaintiff's complaint against Triangle Travel for commissions is dated October 8, 1984. The chancery action on behalf of Triangle Travel seeking the monies plaintiff had transferred to her lawyer, the original business records she had taken and related relief was filed on November 8, 1984, by defendant Ascher. These suits were consolidated and the funds which had been in plaintiff's attorney's trust account were transferred to the trust account of the Clerk of the Superior Court. Both suits were settled and formally terminated on December 10, 1985, by entry of an order.
During the course of the litigation between Triangle Travel and DeVivo, certain records were subpoenaed from Johnson & Johnson. After receiving this subpoena, the attorney for Johnson & Johnson made a claim against Triangle Travel for $7,749.82 allegedly due his client for bookings canceled by Johnson & Johnson employees. Attorney Ascher responded to this claim by letter dated July 12, 1985. In the letter he explained the problems that Triangle Travel was having with the Johnson & Johnson records which were allegedly altered by plaintiff. Ascher further maintained that it had become apparent from the litigation between his client and DeVivo that DeVivo was engaged in "unlawful activity" and that she and another "were engaged in a skimming operation which inured to the detriment not only of [Triangle Travel] but of Johnson & Johnson." These statements, contained in Ascher's July 12, *457 1985 letter to Johnson & Johnson's attorney, formed the basis for DeVivo's libel action.
Defendant maintains that the alleged defamatory statements were made in relation to and during the course of the litigation between his client and plaintiff, and therefore the statements are clothed with absolute immunity. Plaintiff asserts that no privilege is conferred upon defendant under existing case law. The trial court noted that no New Jersey cases have dealt with the issue of whether absolute privilege should attach to a communication by an attorney to a third party regarding a matter relevant to pending litigation.
An absolute privilege may be extended to statements made in the course of judicial proceedings even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party defamed. Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 118 (App.Div. 1957); see also Fees v. Trow, 105 N.J. 330, 337 (1987); Middlesex Concrete, etc. v. Carteret Industrial Ass'n., 68 N.J. Super. 85, 91 (App.Div. 1961). In explaining the distinction between absolute privilege and qualified privilege, our Supreme Court stated in Rainier's Dairies v. Raritan Valley Farms Inc., 19 N.J. 552, 558 (1955):
The most noteworthy illustration of the absolute privilege or immunity is that afforded in judicial proceedings where judges, attorneys, witnesses, parties and jurors are fully protected against defamation actions based on utterances made in the course of the judicial proceedings and having some relation thereto.
Pursuant to this two-prong test for absolute immunity, an utterance must (1) have been made in the course of the judicial proceeding and (2) have some relation to the judicial proceeding. Ibid.
Plaintiff urges that defendant's letter was not issued in the course of a judicial proceeding. We have stated that absolute immunity "is not limited to what a person may say under oath while on the witness stand. It extends to statements or communications in connection with a judicial proceeding. It protects a person while engaged in private conferences *458 with an attorney with reference to litigation." Middlesex Concrete, etc. v. Carteret Industrial Ass'n., 68 N.J. Super. at 92. Absolute immunity is applicable to quasi-judicial proceedings before an administrative agency. Rainier's Dairies v. Raritan Valley Farms Inc., 19 N.J. at 562.
We leave open the question of whether the usual safeguards of a formal judicial proceeding need be present in all cases. See Binkewitz v. Allstate Ins. Co., 222 N.J. Super. 501, 509 (App.Div. 1988). We do, however, favor a broad interpretation of the phrase "in the course of a judicial proceeding." That view is warranted in order that an attorney may enjoy the utmost freedom of communication to secure justice for his client. Libco Corp. v. Adams, 100 Ill. App.3d 314, 55 Ill.Dec. 805, 426 N.E.2d 1130 (Ill. App. 1981).
The Restatement of Torts standard for applying absolute immunity to an attorney in the judicial setting is as follows:
An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. [Restatement 2d, Torts, § 586 (1977) (Emphasis supplied)].
The Restatement's expansive view of the "in the course of" prong was followed by the court in Middlesex Concrete, etc. v. Carteret Industrial Ass'n., supra. In Middlesex, a consultant's report which was to be used in litigation already commenced at the time of its preparation was found to have been rendered "in the course of" that litigation for purposes of the Rainier test. 68 N.J. Super. at 92.
The policy of affording attorneys wide latitude in communications involved with the representation of their clients finds support in other jurisdictions. The court in Hoover v. Van Stone, 540 F. Supp. 1118, 1123 (D.Del. 1982), stated,
[a]dmittedly, application of the absolute privilege in these contexts may conceivably allow a party to engage in malicious fabrication with impunity, neither the threat of a perjury indictment nor the specter of judicial sanctions being present. Confining the privilege to in-court proceedings in which the *459 Court could impose sanctions for, or otherwise control, the dissemination of defamatory statements would have the salutary effect of curbing the frequency or blunting the impact of such improper conduct. Such safeguards, however, would also inhibit the dispatch with which a potential witness would likely come forward with relevant evidence, impede the ability of a litigant to engage in intelligent discovery and needlessly encumber settlement negotiations. Thus, although application of the privilege to events occurring outside of court may sometimes lead to harsh results, the potential for abuse is outweighed by the need for complete candor in these preliminary trial proceedings.
In Russell v. Clark, 620 S.W.2d 865, 868 (Tex.Civ.App. 1981), the court reasoned that to grant less than absolute privilege to the out-of-court statements of the attorneys relating to pending or proposed litigation might tend to lessen the attorney's efforts on behalf of his clients, and stated that an attorney preparing for litigation must not be inhibited by fear of reprisal in the form of actions for defamation.
Defendant's letter was to our view sufficiently connected to the active litigation between Triangle Travel and DeVivo as to be "within the course of a judicial proceeding." The alleged libelous statements were made in response to an inquiry concerning the same accounts at issue in the consolidated cases. That inquiry may well have been prompted by the subpoena issued to Johnson & Johnson during the course of the judicial proceeding. Defendant's letter explained that the exact amount owed Johnson & Johnson was necessarily in dispute due to certain claims made by his client in the pending lawsuit. Defendant's letter was, as he asserted, intertwined with his representation of Triangle Travel in the pending actions. On this basis alone we conclude that the letter should be considered as having been published in the course of a judicial proceeding.
Devlin v. Greiner, 147 N.J. Super. 446 (Law Div. 1977) is not directly applicable to the present case. At issue in Devlin was whether an investigatory report, prepared prior to the institution of any judicial proceeding, could enjoy absolute immunity under the Rainier test. In finding the report failed to meet the first prong, the court emphasized the fact that the report was made "at a time when litigation had not been instituted, and may not even have been contemplated." Id. at 457. The facts *460 here are distinguishable from those in Devlin in that plaintiff and defendant were actively engaged in litigation at the time of the publication. In addition, we observe that the ability of an attorney to communicate freely when a matter is in controversy is just as important in the preliminary negotiating stage as it is on the day the suit papers are filed with the court. We therefore question the holding in Devlin which withholds the protection of absolute immunity until after suit has been commenced. See Lerette v. Dean Witter Organization, Inc., 60 Cal. App.3d 573, 131 Cal. Rptr. 592 (Cal. 1976); Sriberg v. Raymond, 370 Mass. 105, 345 N.E.2d 882 (1976); Russell v. Clark, 620 S.W.2d 865 (Tex.Civ.App. 1981).
The second prong of the test requiring that the statement "have some relation to the judicial proceeding" is clearly met regardless of whether we focus on the then pending litigation between Triangle Travel and DeVivo or the claim asserted by Johnson & Johnson against Triangle Travel.
We stated in Thourot v. Hartnett,
"[i]t is not necessary that the defamatory matter be relevant or material to any issue before the Court. It is enough that it have some reference to the subject of the inquiry. Thus, while a party may not introduce into his pleadings defamatory matter which is entirely disconnected with the litigation, he is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation." [quoting Restatement, 2d Torts, § 587, comment (c)].
........
"Matter, to which the privilege does not extend, must be so wanting in relation to the subject matter of controversy as that no reasonable man can doubt its irrelevancy and impropriety." [56 N.J. Super. 306, 308 (App.Div. 1959), quoting Harlow v. Carroll, 6 App. D.C. 128, 139 (1895)].
This court had earlier stated,
[t]he pertinency thus required is not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to the subject matter of the action. (Citation omitted). As to the degree of relevance needed to invoke the absolute shield of this immunity, the courts are most liberal ... for otherwise the speaker or writer would have to decide the question of [immunity] at his peril, and the sweep of the privilege would be *461 inhibited at the cost of the policy considerations which give it life. (Citation omitted). [Fenning v. S.G. Holding Corp., 47 N.J. Super. at 118].
Relevance is thus interpreted quite broadly and liberally.
Triangle Travel's complaint against DeVivo specifically alleged that DeVivo withdrew by check $4,515.19 from Triangle Travel without authority. The complaint also alleged that DeVivo unlawfully withdrew business records relating to Johnson & Johnson from Triangle Travel's office, and altered those records. Ascher stated in his letter to Trainor that his conclusion that DeVivo, and possibly a Johnson & Johnson employee, were engaged in "skimming" of the Johnson & Johnson account was based on the alterations to the records taken by DeVivo from Triangle Travel, and later returned. These facts support the statement's "relation to the judicial proceeding."
We mention in passing that New Jersey has recognized a need to consider whether the alleged defamation was necessary and reasonable, but only in the context of a qualified privilege. Our Supreme Court stated in Fees v. Trow, 105 N.J. at 338, that a qualified privilege may be lost "unless the information is provided to one with a `corresponding interest' in the information." However, courts in other states have recognized the need to examine the necessity of the communication in determining whether absolute privilege exists. Absolute privilege "may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged." Sullivan v. Birmingham, 11 Mass. App. 359, 416 N.E.2d 528, 530 (Mass. App. 1981). We are satisfied that the communication to Johnson & Johnson was clearly a necessary and reasonable response to its claim.
The publication here was to a third party who was not a party to the pending litigation.
[W]hile a defamatory pleading is privileged, that pleading cannot be a predicate for dissemination of the defamatory matter to the public or third parties not connected with the judicial proceeding. Otherwise, to cause great harm and mischief a person need only file false and defamatory statements as judicial pleadings and then proceed to republish the defamation at will under the cloak of immunity.

*462 [Asay v. Hallmark Cards, Inc., 594 F.2d 692, 698 (8th Cir.1979)].
Communications made to newspaper and other reports in press conferences or any other manner have been almost universally found to be excluded from the protection of absolute privilege. Asay v. Hallmark Cards, supra; Green Acres Trust v. London, 141 Ariz. 609, 688 P.2d 617 (1984); see Restatement 2d, Torts, § 586, comment c; Kennedy v. Cannon, 229 Md. 92, 182 A.2d 54 (Md. App. 1962); Barto v. Felix, 250 Pa.Super. 262, 378 A.2d 927 (Pa.Super. 1977), app. dism. 487 Pa. 455, 409 A.2d 857 (1980). But see Foster v. Pearcy, 270 Ind. 533, 387 N.E.2d 446 (1979), cert. den. 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980) (statements made by county prosecuting attorney to press regarding criminal defendant absolutely privileged).
An absolute privilege has generally been extended to defamatory statements made to third parties in the course of discovery. Pacific Furniture Mfg. v. Preview Furniture Corp., 626 F. Supp. 667, 678-79 (M.D.N.C. 1985), aff'd 800 F.2d 1111 (Fed. Cir.1986). See also Hoover v. Van Stone, 540 F. Supp. 1118 (D.Del. 1982); Russell v. Clark, 620 S.W.2d 865 (Tex.Civ. App. 1981). But cf. Converters Eq. Corp. v. Condes Corp., 80 Wis.2d 257, 258 N.W.2d 712 (Wis. 1977).
In determining whether absolute immunity should apply, it has been stated
[a] privileged communication is one made by a person who has an interest in the subject matter to one who also has an interest in it or stands in such a relation that it is a reasonable duty or a proper one for the person to make the statement. [Robinson v. Home Fire & Marine Ins. Co., 242 Iowa 1120, 49 N.W.2d 521, 525 (Iowa 1951), citing 53 C.J.S., Libel and Slander, § 87(b), page 140].
The court in Libco Corp. v. Adams, 100 Ill. App.3d 314, 55 Ill.Dec. 805, 426 N.E.2d 1130 (Ill. App. 1981) found absolute privilege applied to a letter from one attorney to another, each having a separate client, as both clients shared the same opponent, and the defamatory statements in question were in reference to that opponent.
In Theiss v. Scherer, 396 F.2d 646, 648 (6th Cir.1968), the court found a letter written by defendant attorney to be absolutely *463 privileged, as the letter was written in relation to a will which had been offered for probate and also was in reference to impending litigation to contest that will. The letter was addressed to an attorney who represented a party with a financial interest in the proceeding, and copies were sent to individuals who also had direct financial interests in the settlement of the estate. Ibid. See also Romero v. Prince, 85 N.M. 474, 513 P.2d 717 (N.M.App. 1973).
Johnson & Johnson had an interest in the outcome of Triangle Travel v. DeVivo, as the allegedly "altered" records which Triangle Travel sought to have returned were relevant to the amount owed by Triangle Travel to Johnson & Johnson. While Johnson & Johnson and its attorney were not parties to the active litigation, they were not strangers to that litigation and could properly have been joined as a party. Johnson & Johnson, even though not a party, had a sufficiently significant interest in the communication and litigation for absolute immunity to apply.
The order appealed from is affirmed.