248 N.J. Super. 581 (1991)
591 A.2d 987
DURAND EQUIPMENT COMPANY, INC., A NEW JERSEY CORPORATION, CARMEN A. PETRUZZI AND RITA PETRUZZI, PLAINTIFFS-RESPONDENTS,
v.
SUPERIOR CARBON PRODUCTS, INC., DEFENDANT, AND PAUL M. KLING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1991.
Decided June 4, 1991.
*582 Before Judges MICHELS, BRODY and GRUCCIO.
James F. Schwerin argued the cause for appellant (Hill Wallack & Masanoff, attorneys; James F. Schwerin, of counsel and on the brief).
John Zen Jackson argued the cause for respondents (Jackson & Vaurio, attorneys; John Zen Jackson, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted defendant Paul M. Kling (Kling) leave to appeal from an order of the Law Division that denied his motion *583 for summary judgment with respect to the Fifth and Sixth Counts of a complaint in this contract-tort action. In the Fifth Count of the complaint, plaintiff Carmen A. Petruzzi (Petruzzi) claimed that Kling's false and fraudulent testimony and documents resulted in his conviction for defrauding the United States government in the United States District Court for the Eastern District of Virginia and that such tortious conduct entitled him to recover compensatory and punitive damages. In the Sixth Count of the complaint, Petruzzi's wife, plaintiff Rita Petruzzi, sued per quod. Here, the pivotal issue is whether Kling's testimony and documents utilized by the United States government in preparation of and for criminal proceedings were entitled to absolute immunity. The trial court held that they were not. We disagree and reverse. We hold that Kling's testimony and documents utilized in preparation of and for the criminal proceedings were entitled to absolute immunity, and therefore, Kling is entitled to summary judgment with respect to the claims asserted in the Fifth and Sixth Counts of the complaint in this action.
It is well-settled that a witness in a judicial or quasi-judicial proceeding enjoys an absolute immunity from civil suit for his words and actions relevant to the judicial proceedings. See Briscoe v. LaHue, 460 U.S. 325, 331, 103 S.Ct. 1108, 1113, 75 L.Ed.2d 96, 105, cert. denied sub nom., Talley v. Crosson, 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983); Dairy Stores, Inc. v. Sentinel Pub. Co., Inc., 104 N.J. 125, 136, 516 A.2d 220 (1986); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 558, 117 A.2d 889 (1955); DeVivo v. Ascher, 228 N.J. Super. 453, 457, 550 A.2d 163 (App.Div. 1988), certif. denied, 114 N.J. 482, 555 A.2d 607 (1989); Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n, 68 N.J. Super. 85, 91, 172 A.2d 22 (App.Div. 1961); Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117, 135 A.2d 346 (App.Div. 1957). This absolute immunity is afforded even if "the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party *584 defamed." DeVivo v. Ascher, 228 N.J. Super. at 457, 550 A.2d 163 (citations omitted). "[A]bsolute immunity `is not limited to what a person may say under oath while on the witness stand. It extends to statements or communications in connection with a judicial proceeding.'" Id. (quoting Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n, 68 N.J. Super. at 92, 172 A.2d 22). Absolute immunity extends not only to testimony and documents admitted in evidence but also to documents utilized in the preparation of judicial proceedings. Id., 228 N.J. Super. at 457-60, 550 A.2d 163; Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n, 68 N.J. Super. at 91-92, 172 A.2d 22.
"The privilege grows out of the strong public policy `that persons in such circumstances be permitted to speak and write freely without the restraint of fear ... this sense of freedom being indispensable to the due administration of justice.'" Id. at 91, 172 A.2d 22 (quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. at 117, 135 A.2d 346). Because the witness plays such an integral role in the fact-finding process, a reluctant or reticent witness would disservice the ends of justice. A witness who knows that he may be forced to defend a subsequent lawsuit "might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." Briscoe v. LaHue, 460 U.S. at 333, 103 S.Ct. at 1114, 75 L.Ed.2d at 106. The common law recognized that:
controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation. [Id. (emphasis added)].
The truth-seeking function of the court demands evidence. The discovery, organization and understanding of evidence is a vital part of the judicial process. The search for evidence necessitated Kling's testimony before the federal grand jury and during Petruzzi's criminal trial and required Kling's production *585 of documents to the United States government in connection with the preparation of those proceedings. The possibility that a witness may be forced to defend a lawsuit for damages can only discourage his involvement in a judicial proceeding. The court's need for evidence demands that all participants in the process of gathering evidence for use at trial be immune from any liability for damages for their part in that process.
The absolute immunity granted to witnesses is not designed to benefit the dishonest witness but to further the broad public interest in having witnesses who are unafraid to testify fully and openly. As Judge Learned Hand remarked in discussing a prosecutor's immunity,
[a]s is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. [Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950) (cited approvingly in Imbler v. Pachtman, 424 U.S. 409 at 428, 96 S.Ct. 984 at 994, 47 L.Ed.2d 128 at 142) (1976)].
The protection afforded a dishonest witness is a necessary consequence of a rule deemed essential to maintaining the integrity of the judicial process.
Moreover, the policy considerations which compel absolute immunity do not place a witness beyond the reach of criminal law. A witness who makes false statements may be prosecuted for perjury. N.J.S.A. 2C:28-1(a) provides:
A person is guilty of perjury, a crime of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true. [emphasis added].
Federal law provides similar sanctions for perjury:
Whoever 
(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

*586 (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States. [18 U.S.C.A. § 1621 (emphasis added)].
Furthermore, N.J.S.A. 2C:28-6 makes it a crime to tamper with or fabricate physical evidence.
A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
(1) Alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation; or
(2) Makes, devises, prepares, presents, offers or uses any article, object, record, document or other thing of physical substance knowing it to be false and with purpose to mislead a public servant who is engaged in such proceeding or investigation. [N.J.S.A. 2C:28-6 (emphasis added)].
Similarly, federal law makes it a crime to tamper with evidence:
Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both. [18 U.S.C.A. § 1623(a) (emphasis added)].
There are sufficient incentives for truth and disincentives for lying imposed upon a witness so that adding the threat of civil litigation is unlikely to increase the assurance of witness truthfulness. Our Supreme Court in Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. at 562, 117 A.2d 889, when it discussed the extension of the absolute immunity doctrine to quasi-judicial proceedings, noted:
It is true that in strictly judicial proceedings the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions; and the view has been expressed that it is only the potential harm as thus mitigated which may properly be considered outweighed by the public interest in favor of broad access by suitors to the courts.
*587 The threat of criminal sanctions provides a sufficient deterrent against abuse of the witness privilege of absolute immunity. "[I]f the risk of having to defend a civil damage suit is added to the deterrent against such conduct already provided by criminal laws against perjury and subornation of perjury, the risk of self-censorship becomes too great." Imbler v. Pachtman, 424 U.S. at 439-40, 96 S.Ct. at 999, 47 L.Ed.2d at 149 (White, J., concurring).
Procedural safeguards built into the judicial process also control a witness' conduct. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. at 562, 117 A.2d 889. Here, Petruzzi had an opportunity to present his case to a neutral trial judge. As a witness, Kling was subject to the control of the trial judge and was subject to contempt citations for misbehavior and to prosecution for perjury if he knowingly gave false testimony. Further, Kling's testimony was under oath, and his testimony and the evidence he provided was subject to cross-examination. As Justice White noted, the truthfinding process is better served if the witness' testimony is subject to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies." Imbler v. Pachtman, 424 U.S. at 440, 96 S.Ct. at 999, 47 L.Ed.2d at 149 (White, J., concurring). Finally, even assuming that Kling's testimony was false and his documents fabricated, the existence of federal avenues of judicial appeal was sufficient to cure any alleged infirmities in the criminal prosecution.
In Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. at 558, 117 A.2d 889, the Court set forth a two-prong test for absolute immunity. "The most noteworthy illustration of the absolute privilege or immunity is that afforded in judicial proceedings where judges, attorneys, witnesses, parties and jurors are fully protected against defamation actions based on utterances made in the course of the judicial proceedings and having some relation thereto." Id. (emphasis added). Kling satisfies both prongs of the test because (1) the utterances *588 contained in testimony and documentation were made in the course of the judicial proceedings or in the preparation therefor, and (2) the utterances had some relation to the judicial proceedings. Therefore, Kling's testimony and documents utilized in preparation of and for the criminal proceedings against Petruzzi were absolutely privileged.
Accordingly, we reverse the partial summary judgment under review and enter judgment in favor of Kling, dismissing the Fifth and Sixth Counts of the complaint with prejudice. In view of our decision that Kling is entitled to absolute immunity with respect to the claims asserted in the Fifth and Sixth Counts of the complaint, we do not reach or decide the issues of (1) whether the allegations of the Fifth and Sixth Counts of the complaint set forth a cause of action; (2) whether the doctrine of collateral estoppel precludes Petruzzi from relitigating the issues decided in his criminal trial, and (3) whether N.J.S.A. 2A:14-22, the tolling state, is unconstitutional, and the claims asserted in the Fifth and Sixth Counts are barred by the applicable statute of limitations.