**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4474-15T3

XCALIBUR COLLECTIONS, LLC and
ANDREA LOIACONO,

     Plaintiffs-Appellants,

v.

ANDREW J. KARCICH,

     Defendant-Respondent.

_____

     Argued September 19, 2017 — Decided October 31, 2017

     Before Judges Fasciale and Moynihan.

     On appeal from Superior Court of New Jersey,
     Law Division, Burlington County, Docket No.
     L-1632-15.

     Mark J. Molz argued the cause for appellants.

     Fardene E. Blanchard argued the cause for
     respondent (Lynch & Karcich, LLC, attorneys;
     Ms. Blanchard, on the brief).

PER CURIAM

    Plaintiffs appeal from a May 26, 2016 order dismissing their
second amended complaint pursuant to <u>Rule</u> 4:6-2(e). On appeal,
plaintiffs argue it was "plain error" for the motion judge to find
the statements in defendant's letters were protected by the

litigation privilege; that discovery should have been completed before the motion was decided; and that the litigation privilege should not extend to defendant because his litigation tactics constituted "bad behavior with nefarious intent." Applying the absolute litigation privilege doctrine, we conclude plaintiffs failed to state a claim upon which relief can be granted. We therefore affirm.

Defendant represented J.P. and V.P. in a small claims lawsuit filed by plaintiffs (the underlying suit). On March 6, 2015, defendant filed a counterclaim on behalf of his clients. The counterclaim was founded on an agreement between plaintiffs and J.P., whereby plaintiffs were to act as J.P.'s trading assistants for the sale of his merchandise on eBay. In the counterclaim, J.P. alleged breach of contract, violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, conversion, fraud and the right of replevin; he sought payment for his items sold by plaintiffs on eBay, and the return of items that J.P. delivered to plaintiffs, but were never sold. The counterclaim in the underlying suit also sought compensatory damages, treble damages under the Consumer Fraud Act, punitive damages, interest, attorneys' fees and costs of suit. The court transferred the underlying suit from small claims court to special civil part.

2

While the underlying lawsuit was pending, plaintiffs filed this law division complaint against J.P. and V.P.; they added defendant as a party, alleging two letters he wrote to eBay defamed plaintiffs. Defendant first learned he was named as a party when plaintiffs' counsel advised him at the scheduled special civil part trial on July 15, 2015. Plaintiffs' counsel also told defendant that he had moved to consolidate the underlying suit with the law division case. The underlying suit settled in late July; as a result, plaintiffs' motion to consolidate was denied.

Defendant removed himself as counsel for J.P. and V.P. after he was named in this suit, and signed a substitution of attorney. On September 17, 2015, plaintiffs filed a second amended complaint in the law division, which defendant sought to dismiss, arguing plaintiffs failed to state a claim upon which relief could be granted, Rule 4:6-2(e), because even if the statements in the letter to eBay were defamatory, he was protected from liability under the litigation privilege.

Plaintiffs' complaint against defendant, alleging "intentional acts or omissions . . . as well as misrepresentation, interference with contract, interference with economic advantage and any other cause of action allowed by law," was based on two

letters written by defendant to eBay on March 23 and 31, 2015.[1]

Defendant did not address the letters to a particular person at

eBay; the salutation was "Dear eBay personnel." The portions of

the letters plaintiffs allege were defamatory are quoted in their

second amended complaint:

> Loiacono refuses to pay money to my client
> monies due and owing to him based on
> [Loiacono's] sales of my client's merchandise
> on eBay and Loiacono further refuses to return
> the remaining hundreds of items in Loiacono's
> care which were never listed or for which
> listings were terminated, with those items
> valued in the thousands of dollars, despite
> numerous requests. It also appears that
> Loiacono likely never had a Fidelity Bond in
> place in connection with his actions as a
> trading partner.[2]

The motion judge granted the Rule 4:6-2(e) motion, finding

the statements in defendant's letters addressed issues involved

in the litigation, and were thus protected by the litigation

privilege.

On a motion to dismiss for failure to state a claim under

Rule 4:6-2(e), a court must "accept as true the facts alleged in

the complaint[,]" Darakjian v. Hanna, 366 N.J. Super. 238, 242

---

[1] The only difference between the letters is that the later one specifies it was sent by both regular and certified mail; the first letter does not indicate how it was posted. The bodies of the letters are identical.

[2] In the quoted section of the complaint, Loiacono is spelled as "Loiacono" and "Loiacnono." We use Loiacono for consistency.

(App. Div. 2004), and "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "The court may not consider anything other than whether the complaint states a cognizable cause of action." Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987). The party opposing the motion is "entitled to every reasonable inference of fact." Printing Mart-Morristown, supra, 116 N.J. at 746.

The absolute litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Hawkins v. Harris, 141 N.J. 207, 216 (1995). The litigation privilege provides immunity from suit to permit unfettered expression by litigants, a policy concern that is critical to advancing the underlying government interest at stake in such settings. Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563 (1990); see also Rabinowitz v. Wahrenberger, 406 N.J. Super. 126, 134 (App. Div.), appeal dismissed, 200 N.J. 500 (2009) (recognizing the litigation privilege as "indispensable," and noting that "[t]he public policy

rationale for the litigation privilege has not changed in half a millennium"). "This absolute privilege applies 'even if the words are spoken maliciously, without any justification or excuse, and from personal ill will or anger[.]'" Williams v. Kenney, 379 N.J. Super. 118, 134 (App. Div.) (alteration in original) (quoting DeVivo v. Ascher, 228 N.J. Super. 453, 457 (App. Div. 1988), certif. denied, 114 N.J. 482 (1989)), certif. denied, 185 N.J. 296 (2005). If the privilege attaches as a matter of law, "all vestige of a cause of action is consumed in the necessary supremacy of the rule of public policy . . . ." Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 120 (App. Div. 1957). "Although defamatory, a statement will not be actionable if it is subject to an absolute or qualified privilege." Erickson, supra, 117 N.J. at 563.

We have broadly interpreted the phrase, "made in judicial or quasi-judicial proceedings[,]" Hawkins, supra, 141 N.J. at 216, as extending the privilege "to all statements or communications in connection with the judicial proceeding[,]" not just statements made in court, Ruberton v. Gabage, 280 N.J. Super. 125, 133 (App. Div.), certif. denied, 142 N.J. 451 (1995). "Thus, the privilege extends to 'preliminary conversations and interviews between a prospective witness and an attorney if they are in some way related to or connected with a pending or contemplated action.'" Hawkins, supra, 141 N.J. at 216 (quoting Ascherman v. Natanson, 100 Cal.

Rptr. 656, 659 (Ct. App. 1972)); see also DeVivo, supra, 228 N.J. Super. at 459 (applying the privilege to an attorney's letter, alleged to contain libelous statements, written to counsel for a company not a party to the litigation). The extension of the privilege to communications by attorneys is grounded in the ability to discipline counsel who flout the boundaries of permissible conduct. Hawkins, supra, 141 N.J. at 220-21.

Defendant, as counsel for J.P. and V.P., wrote the letters after plaintiffs commenced litigation and after the counterclaim had been filed. They were, therefore, written in the course of the underlying litigation, and counsel was a "participant[] authorized by law[.]" Id. at 216.

There exists an interrelationship between the third and fourth prongs. "Whether the statements were made to achieve the objects of the litigation depends on their relationship to the investigation." Id. at 218 (emphasis omitted).

Relevancy has been broadly and liberally interpreted. DeVivo, supra, 228 N.J. at 461. We have held a defamatory communication need not have direct relevance or materiality to an issue before the court; "[i]t is enough that it have some reference to the subject of the inquiry." Thourot v. Hartnett, 56 N.J. Super. 306, 308 (App. Div. 1959), certif. denied, 31 N.J. 553 (1960); see also DeVivo, supra, 228 N.J. at 460. "The pertinency

thus required is not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to the subject matter of the action." Fenning, supra, 47 N.J. Super. at 118; see also Hawkins, supra, 141 N.J. at 218. The privilege, however, will not extend to matters "so wanting in relation to the subject matter of controversy as that no reasonable man can doubt its irrelevancy and impropriety." Thourot, supra, 56 N.J. Super. at 308; see also DeVivo, supra, 228 N.J. Super. at 460.

In Hawkins, defense investigators were hired to gather information related to two accidents in which the plaintiff was allegedly injured. 141 N.J. at 211-12. The Court found relevant, and therefore privileged, statements made by the investigators to plaintiff's minister whom they told that plaintiff and her husband were committing insurance fraud, and to plaintiff's housekeeper of whom they asked how much money plaintiff was paying her to lie. Id. at 212-13, 221.

Defendant informed eBay that his clients were induced to hire plaintiffs "based on the conditions of the eBay Trading Assistant Program and representations on [eBay's] website concerning the program," and specified the portions of eBay's program upon which his clients relied. While defendant asked that plaintiffs be

suspended as eBay trading assistants,[3] he also asked how eBay intended to "handle this matter." His general inquiry — addressed to no one in particular at eBay — framed his client's allegations; it was an initial communication made to a company that was not unrelated to the litigation. Thus, the detailed version of events set forth in the letters reflecting his clients' position regarding plaintiffs' alleged actions were related to the action pending between plaintiffs and defendant's clients.

In light of defendant's advice to eBay that his clients relied on eBay's representations, and his request for a response from eBay as to their intentions, the letters are in line with the type of inquiry deemed by our Supreme Court to be "necessary to a thorough and searching investigation of the truth, and, therefore, essential to the achievement of the objects of litigation." Hawkins, supra, 141 N.J. at 217. The requested response could well have led to a claim against eBay by defendant's clients, or an investigation by eBay into plaintiffs' practices that could have supported defendant's clients' claim against plaintiffs. We conclude, therefore, as did the motion judge, that defendant's

---

[3] Plaintiffs, in the second amended complaint, do not claim that defendant's request for their suspension was actionable. They claim only defamation because of the false statements we have already detailed.

letters were meant to achieve the objects of the litigation between the parties.

The litigation privilege was designed to allow "an unqualified opportunity to explore the truth of a matter without fear of recrimination." Ibid. Even accepting the allegations in plaintiffs' complaint as true, defendant's letters are protected by the privilege. Inasmuch as the letters are privileged, the judge correctly dismissed plaintiffs' complaint.

We conclude that plaintiffs' remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4474-15T3