**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3276-20

ALPHA AERONAUTICS OF
NEW JERSEY, INC.

      Plaintiff-Respondent,

v.

ANDREW L. ROCHESTER, ESQ.,
ANDREW L. ROCHESTER, LLC,
and MORGENSTERN &
ROCHESTER, LLC,

      Defendants-Appellants.

_____

      Argued February 7, 2022 – Decided April 1, 2022

      Before Judges Accurso, Rose, and Enright.

      On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0705-18.

      Melissa J. Brown argued the cause for appellants (Marks, O'Neill, O'Brien, Doherty & Kelly, PC, attorneys; Melissa J. Brown, Sean X. Kelly, and Amanda A. King, on the briefs).

      Mark J. Molz argued the cause for respondent.

PER CURIAM

Defendants Andrew L. Rochester, Esq. (Rochester), Andrew L. Rochester, LLC, and Morgenstern & Rochester, LLC (Law Firm defendants) appeal from a May 12, 2021 order denying their summary judgment motion. We reverse.

This civil matter arises out of an underlying divorce action in Mercer County between Mark Molz, Esq., counsel for plaintiff Alpha Aeronautics of New Jersey, Inc. (Alpha), and his ex-wife, Theresa Mitchell (f/k/a Molz). Defendants represented Mitchell in the divorce action before Judge Catherine Fitzpatrick; Molz also had legal counsel during the divorce proceedings, but at times, represented himself. Judge Fitzpatrick entered a final judgment of divorce (JOD) in January 2018.

Molz appealed from the JOD, challenging certain awards of equitable distribution, alimony, and counsel fees to Mitchell. He also challenged a post-judgment order holding him in contempt and an enforcement order involving certain corporate entities held by one or both parties during the marriage. In an unpublished opinion, we affirmed the JOD, as well as the contested post-judgment orders, Molz v. Molz, No. A-2888-17 (App. Div. May 1, 2020); several months later, the Supreme Court denied Molz's petition for certification. 244 N.J. 163 (2020).

We need not detail the evidence adduced in the Molz divorce trial. But having addressed equitable distribution issues in our unpublished opinion, we do not ignore that Molz and Mitchell provided testimony to Judge Fitzpatrick regarding Alpha and the 1973 Piper Seneca plane (Seneca) it owns.

For example, during cross-examination, Molz initially testified he owned the Seneca, but then clarified "it's owned by Alpha Aeronautics." He also stated that during the marriage the original engines from Alpha's "two engine airplane" were "overhauled," he "put both [engines] in," and the "overhaul for each engine" cost "[p]robably around ten" thousand dollars. Asked by Mitchell's counsel to confirm if "at least $20,000 was spent" to overhaul the engines, Molz responded, "Yes, sir. Twenty years ago." Molz further testified the Seneca had at least one paint job and the "avionics in this aircraft were replaced." Additionally, he stated it was "possible that [he] loaned the money to [Alpha]" to replace the avionics and he "doubt[ed]" Alpha repaid the loan. Moreover, he testified "[a] GPS with autopilot was installed [in the Seneca] during the course of the marriage" which was "upgraded . . . for the safety of the family and to make sure that the aircraft was safe to operate." Molz also filed a Case Information Statement in the divorce action, listing Alpha as his premarital

asset. Additionally, he named Alpha as one of his businesses when he appealed from the JOD.

Mitchell testified during the divorce trial that she was not involved in the purchase of the Seneca, admitting it was purchased by Molz with another partner before the marriage. Still, she stated she was entitled to share in the value of the Seneca because she and Molz "maintained it, put new equipment in it," and "kept the airplane up" from "very early in the marriage." Mitchell also estimated the parties spent "between [$]10 and 15,000" for a GPS for the Seneca, and they paid roughly $25,000 when Molz "wanted to buy a new GPS system" years later.

In her January 2018 opinion, Judge Fitzpatrick specifically referenced the Seneca, finding:

> this twin engine aircraft was owned prior to the marriage, [but Mitchell] argue[d] that a significant amount of maintenance and upgrading was done with regard to this aircraft to include that the avionics were replaced, on two occasions, a GPS with autopilot was installed during the marriage, the entire interior was also replaced, the plane had two paint jobs that cost at least $7,500 each and the twin engines were rebuilt at least twice during the marriage with each engine rebuilding costing at least $5,000 or a total of $20,000 for four engines.
>
> Marital funds were used for all of the above as well as the hangar rental and tie down fees.

A-3276-20

The plane shall be sold and the net proceeds shall be divided as follows: 60% to [Molz] and 40% to [Mitchell], recognizing a premarital component to the airplane[] but significant improvements made with marital funds throughout the marriage.

When Molz appealed from the JOD, he contended, in part, that Judge Fitzpatrick "had no authority to equitably distribute his [premarital] planes[.]" Molz, slip op. at 19. We disagreed, deferring to the judge's findings regarding the subject aircraft, and observed

> the trial judge . . . granted [Mitchell] a 40% interest and [Molz] a 60% interest in the net value of [Molz]'s two premarital planes (owned by Alpha . . . and Snow Enterprises) . . . . In doing so, the judge recognized a "premarital component" to these assets. Still, [Molz] maintains the judge had no authority to equitably distribute his premarital planes . . . . His claim of error, in part, arises from his contention that [Mitchell] "lied" about using marital funds to maintain his premarital assets. We defer to [the judge's] factual and credibility findings in this regard. . . .
>
> As there is overwhelming evidence to support Judge Fitzpatrick's finding that [Mitchell's] testimony regarding the expenditure of marital funds to improve, maintain and restore [Molz's] premarital assets was credible, we will not disturb the judge's equitable distribution rulings. [Molz] simply failed to meet his burden of proof to establish that any premarital or corporate assets were immune from distribution.
>
> [Id. at 19-20 (emphasis added).]

5

Three months after the JOD was entered, Molz, as Alpha's attorney, filed a Law Division complaint against defendants.[1] The complaint alleged Alpha owned the subject Seneca as of 1993 and that Rochester, both individually and on behalf of the Law Firm defendants, made the following misrepresentations to Judge Fitzpatrick, "[d]espite his actual knowledge or imputed knowledge of the true facts":

> A. That the aircraft had received [four] new engines during the course of the marriage; and/or
>
> B. That the aircraft had received two paint jobs during the course of the marriage; and/or
>
> C. That the aircraft was a marital asset; and/or
>
> D. Other representations that will become apparent during discovery.

Alpha further alleged defendants failed to name it as a party in the divorce action yet sought "the sale of [its] [c]orporate assets without notice, the opportunity to be heard, jurisdiction or any other legal basis."[2] Moreover, Alpha claimed Rochester: "was negligent"; "deviated from the accepted standard of care for attorneys"; and "proximately caused [it] as a third[-]party beneficiary

---

[1] Alpha's complaint was filed in Burlington County.

[2] It is undisputed that Molz, likewise, chose not to name Alpha, or his other corporate entities, as parties in the divorce action.

to sustain financial injury[.]"  Additionally, Alpha asserted that Rochester "had copies of the aircraft's logbooks" and was aware that the claims he advanced on Mitchell's behalf for equitable distribution "lacked merit."  Alpha demanded punitive and compensatory damages, as well as counsel fees and costs against defendants "for professional negligence, legal malpractice, breach of fiduciary duty, fraud and/or for any other causes of action allowed by law."

Defendants moved to dismiss Alpha's complaint for failure to state a cause of action.  The Law Division judge denied the motion without prejudice in August 2018.  Shortly thereafter, the judge denied defendants' motion for reconsideration of the August 2018 order.

After we affirmed the JOD and the Supreme Court denied Molz's petition for certification, defendants moved for summary judgment, arguing Alpha's claims were barred by the litigation privilege, res judicata and collateral estoppel.  Further, defendants contended Alpha's legal malpractice claims could not proceed because defendants never had a relationship with Alpha, "professional or otherwise."  Also, defendants highlighted that in our May 2020 opinion, we concluded some of Molz's "premarital assets were purchased through corporate entities owned or controlled by him, including . . . a 1973 Piper Seneca" and that Molz "simply failed to meet his burden of proof to

establish that any premarital or corporate assets were immune from distribution." Id. at 4, 20.

Alpha opposed the summary judgment motion. In responding to defendants' statement of material facts, it argued its "claim [against defendants] center[ed] on material misrepresentations by . . . Rochester and his LLCs." Further, Alpha stated, "Judge Fitzpatrick adopted . . . Rochester's closing argument" and "relied upon . . . Rochester's representations of improvements to the airplane that enhanced its value which are the subject of this lawsuit." Moreover, Alpha stated "the Appellate Division did not consider facts but instead, deferred to Judge Fitzpatrick's factual findings which [were] adopted, wholly or in part, from . . . Rochester's written summation."

Argument on the summary judgment motion before the Law Division judge commenced in January 2021 and concluded argument two months later. During the January 2021 proceeding, defendants asserted that any communications made in the divorce proceeding were protected by the litigation privilege and that Molz was fully aware of those communications. The judge agreed with defense counsel that Molz "was in the courtroom [during divorce proceedings] when these [challenged] statements were being made." He also agreed that as a party to the divorce litigation and a stockholder in Alpha, Molz

"kn[ew] of these statements being made" about the Seneca. Further, the judge stated, "[t]here's no question that Mr. Molz as a shareholder was put on notice."[3]

Without citing any authority, Molz, as Alpha's counsel, argued "there is no litigation privilege that extends to a nonparty." Because Alpha was not a party to the divorce litigation, Molz urged the Law Division judge to find defendants were not shielded from liability for any communications made in the underlying action about Alpha or its assets. Molz acknowledged holding stock in Alpha, that he "was the attorney for the corporation" during the divorce trial, and that during the trial, he moved into evidence the Seneca's registration. Nonetheless, he maintained he "was not noticed that this was going to be an issue."

The judge agreed to carry the hearing to March 2021 to allow counsel to provide supplemental briefing on whether the litigation privilege shielded defendants from liability. When the parties returned to court, the judge heard

---

[3] The judge also remarked that once Molz claimed in the divorce action that the Seneca was premarital, "it shift[ed] the burden . . . to the other side to, therefore, produce the evidence that that's not true." But, as we noted in Molz's appeal from the JOD, "[t]he burden of establishing that an asset or any portion thereof is immune from distribution rests on the party claiming its immunity." Molz, slip op. at 16 (emphasis added) (citing Pacifico v. Pacifico, 190 N.J. 258, 269 (2007)).

additional argument before denying the summary judgment motion. He explained it was inappropriate to grant defendants' application without discovery being completed or until he had "a firm grasp of what was said where, what, when, why, [and] whether [a challenged statement] was intentional or not."

On appeal, defendants renew the argument they were entitled to summary judgment because any statements made during the divorce litigation by Rochester, whether individually or on behalf of the Law Firm defendants, were protected by the litigation privilege. We agree.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Thus, we consider, as the Law Division judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 536 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente, 224 N.J. at 199 (quoting R. 4:46-2(c)).

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence' that creates a genuine issue of material fact." Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Sullivan v. Port Auth. of N.Y. and N.J., 449 N.J. Super. 276, 283 (App. Div. 2017) (alteration in original) (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005)).

"Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). "When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Whether a party is entitled to assert a litigation privilege is a question of law. Hawkins v. Harris, 141 N.J. 207, 216 (1995). The privilege's public policy rationale stems from the need for lawyers and litigants to "be permitted to speak and write freely without the restraint of fear of an ensuing defamation action." Loigman v. Twp. Comm. of Twp. of Middletown, 185 N.J. 566, 580 (2006) (quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957)). Further, the privilege "may be extended to statements made in the course of judicial proceedings even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party defamed." De Vivo v. Ascher, 228 N.J. Super. 453, 457 (App. Div. 1988).

The absolute litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Hawkins, 141 N.J. at 216. We consider "neither the justness of the lawyers' motives nor the sincerity of their communications" in applying the privilege because lawyers "must be free to pursue the best course charted for their clients without the distraction of a vindictive lawsuit looming on the horizon." Loigman, 185 N.J. at 586, 587-88.

We have broadly interpreted the phrase, "made in judicial or quasi-judicial proceedings[,]" Hawkins, 141 N.J. at 216, as extending the privilege "to all statements or communications in connection with the judicial proceeding[,]" not just statements made in court, Ruberton v. Gabage, 280 N.J. Super. 125, 133 (App. Div. 1995); see De Vivo, 228 N.J. Super. at 459 (applying the privilege to an attorney's letter, alleged to contain libelous statements, written to counsel for a company not a party to the litigation). The extension of the privilege to communications by attorneys is grounded in the ability to discipline counsel who flout the boundaries of permissible conduct. Hawkins, 141 N.J. at 220-21.

Here, we are convinced the absolute litigation privilege applies to the subject communications made by Rochester, both individually and on behalf of the Law Firm defendants. We reach this conclusion because: Rochester made the statements while representing Mitchell during divorce proceedings; Mitchell authorized defendants to make such communications; the communications stemmed from defendants' efforts to ensure Mitchell received what she was due by way of equitable distribution; and the communications were logically related to that objective. Thus, consistent with the criteria outlined in Hawkins, defendants' communications were protected by the litigation privilege and the

Law Division judge should have granted defendants' summary judgment motion dismissing Alpha's complaint.

Given our determination, we need not address defendants' alternative arguments that Alpha's action should have been dismissed based on the doctrines of collateral estoppel and res judicata, or because Alpha failed to establish any element of a claim for legal malpractice.

Reversed and remanded for entry of summary judgment in favor of defendants, as well as an order dismissing plaintiff's complaint.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                          A-3276-20